IN THE MATTER OF THE APPLICATION OF THOMAS T. CHURCH FOR THE APPOINTMENT OF COMMISSIONERS TO OPEN NINETY-SECOND STREET IN THE TOWN OF NEW UTRECHT.

*Constitution — an act is not "local" because it may be applicable to but few subjects — Const. art. 3, secs. 18, 23 — chap. 554 of 1881 does not conflict with them.*

Chapter 554 of 1881 conferred upon boards of supervisors power "to authorize in any county containing an incorporated city of one hundred thousand inhabitants or upward, when any territory within such county and beyond the limits of such city has been mapped out into streets and avenues, in pursuance of law, the establishment of a plan for the grades of such streets and avenues, the laying out, opening, grading, construction, closing and change of the line of any one or more of them; to provide for the estimation and award

of the damages to be sustained, and for the assessment on property intended to be benefited thereby, and fixing assessment districts," etc.

*Held,* that as the act applied to all counties containing an incorporated city of 100,000 inhabitants or upwards, it was not a local act within the meaning of section 18 of article 3 of the Constitution prohibiting the passage of local bills providing for the laying out or opening of roads, highways or alleys, or of section 23 of the same article requiring powers of local legislation to be conferred upon boards of supervisors by general laws.

That although such power was not expressly conferred by the act, the Supreme Court had jurisdiction to entertain an application for the appointment of commissioners to estimate and appraise the damages and benefits occasioned by the laying out of a street directed to be opened by the board of supervisors as provided in the act.

APPEAL from an order made at a Special Term, appointing commissioners to appraise the damages and estimate the benefits to be occasioned by the laying out of a street in the town of New Utrecht, in Kings county.

*George B. Ely,* for Wm. Rockwell and others, appellants.

*N. H. Clement,* for the petitioner, respondent.

DYKMAN, J. :

In 1869 an act of the legislature constituted certain town officers of some of the outlying towns in the county of Kings, commissioners, to lay out a plan for streets and roads in those towns respectively ; chapter 670, Laws of 1869. Among them was New Utrecht. On these commissioners power was conferred to lay out streets, roads and avenues in such towns conformable to plan of streets of the city of Brooklyn, terminating at the city line, or as nearly as might be practicable and judicious. Their power in this regard was exclusive and no road could be projected without their consent, without special legislative action ; after the adoption of their plan no street could be laid out in those towns not in accordance therewith, and if any building was thereafter erected on the line of any street on said plan, no compensation could be obtained by the owner thereof on the opening of the street. The plain object of this law was to establish a uniform system of streets to be thereafter opened. In performance of the duties imposed on them by this law, these commissioners prepared a map, including among others the town of New Utrecht, and laying out the

whole area of that town in projected avenues and streets, similar to those in Brooklyn city. Among others was Ninety-second street, beginning at Seventh avenue and running thence to Fourth avenue, with a uniform width of eighty feet, and from Fourth avenue to the Shore road a uniform width of sixty feet. This street was projected through the lands of all the landowners opposing this proceeding.

This law was amended by chapter 581 of the Laws of 1874, but in no way material to the present inquiry. The law as it stands amended has received compliance, and there is no complaint of irregularity or omission.

By chapter 554 of the Laws of 1881, the legislature amended the act conferring powers of local legislation on boards of supervisors, so as to authorize the board of supervisors in any county containing an incorporated city of 100,000 inhabitants, where territory within such county and beyond the limits of the city, had been mapped into streets and avenues in pursuance of law, to establish a plan of their grades, and lay out, open, grade and construct the same, and to provide for the estimation and award of damages and for the assessment of benefits. This amended law confers all the powers that have been exercised here, and the objection raised is not to the regularity of the proceedings.

After this amendment in December, 1881, the board of supervisors of Kings county instituted proceedings under and in pursuance of the laws already noticed for the opening of Ninety-second street, in the town of New Utrecht, which have been conducted so far as to apply for commissioners of assessment and award preparatory to opening the street. These proceedings require no detailed examination as no question arises thereon.

Objection was made to the appointment of these commissioners, on the ground that the action of the board of supervisors was unauthorized by the amended law of 1881, and also because that law was in contravention of the State Constitution. These objections were put aside at Special Term and the order was made from which we have this appeal.

The first question raised requires little examination, for the law as it is written has been followed in all the proceedings. The letter of the statute does not kill, and its spirit maketh alive. The

subsequent law of 1881 was made in full view of the statute of
1869, and both are in full harmony. The case provided for in the
later, is precisely the situation left by the proceedings under the
earlier.

The important question comes on the constitutionality of the
law of 1881. The Constitution of the State prohibits the granting
of legislative power to county boards except by general laws,
and also prohibits the legislature from providing for laying out,
opening and constructing streets except by general laws. (Art. 3,
§§ 18, 23.) If, therefore, this statute is inhibited by the funda-
mental law of the State, it is because it is local and not general.
General laws for the purpose contemplated being unforbidden.
A local law is one having application to a particular locality only,
and having no force beyond a particular city or other political
division, while a general law is its opposite, unlimited to any par-
ticular territory, and common and public in its operation and
application.

If this law had application to all the cities of the State, it would
clearly be unobnoxious to constitutional objection. It does apply
to all counties containing an incorporated city of 100,000 inhabit-
ants or upward. How many counties fall under its operation does
not appear and cannot appear. It includes all of a certain class or
description and is valid on its face. Invalidity will not be imputed
to any such statute, neither will testimony be taken to destroy it.
There is no rule by which it may be certainly determined when a
law is local or general, and definitions are not easily framed for all
cases. Yet legislative action is to be upheld when not plainly vio-
lative of the fundamental law. Everything is to be presumed in
its favor, and in this case the presumption is that there are counties
in this State falling within this law to make it valid and unobjec-
tionable. It cannot be assumed that the legislature has exceeded
its authority, and there is no evidence that it has so done.

*In the Matter of New York Elevated Railroad Company* (70
N. Y., 327), the opinion of the court has this language : "The law
does not specify any particular elevated steam railway in actual opera-
tion, but in its terms applies to any and all such railways anywhere
in operation. How are we to know that there was but one in opera-
tion at the time of the passage of the act? Can a court take proof

for the purpose of showing a statute, valid and regular upon its face, to be unconstitutional, and does the validity of a law which is required to be general, and which is general in its terms, depend upon the number of subjects upon which it can operate or upon the size of a class to which it applies? These questions must be answered in the negative. We do not know and we cannot assume that the legislature knew that there was but one elevated steam railway in actual operation in this State at the time of the passage of the act." This seems to cover the point under consideration and determine the validity of this law.

An objection was taken that the Supreme Court had no jurisdiction to appoint these commissioners, and in answer it is to be said that the Supreme Court has general jurisdiction in law and equity, and the law which we have examined and pronounced valid, authorized the board of supervisors to lay out, open and construct this street in question. The Constitution requires damages sustained by land owners to be ascertained by a jury or by commissioners, as incident to the power to open this street; therefore the board did possess the right to make the application to this court, and they did authorize it to be made. The petitioner is a freeholder and owner of property within the assessment district, and was authorized to make the application for commissioners.

Objection was also made that no highway can be laid through improved land, except through the intervention of a jury to certify its necessity. This is one of the provisions of the general highway laws of the State which have no application. This street is already laid out under the Laws of 1869. Neither has the general prohibition against laying out roads through buildings and inclosures any application.

Other points of a similar character were made and have received examination, but we find that the proceedings challenged are similar to those that have been taken, with much of repetition, and received sanction from the courts in numerous cases.

The order appealed from should be affirmed, with costs and disbursements.

BARNARD, P. J , and GILBERT, J., concurred.

Order affirmed, with costs and disbursements.